UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MICHAEL P. HEFFERN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00410-WTL-DLP |
| | ) | |
| STATE OF INDIANA, | ) | |
| DICK BROWN, | ) | |
| | ) | |
| Respondents. | ) | |

**Order Denying Petition for Writ of Habeas Corpus
And Denying a Certificate of Appealability**

Petitioner Michael P. Heffern is serving a 75-year sentence for his 2010 Jay County, Indiana convictions for murder and robbery. He brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, Mr. Heffern's petition for a writ of habeas corpus is **denied** and the action is **dismissed with prejudice**. In addition, the Court finds that a certificate of appealability should not issue.

### I.  Factual and Procedural Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). On direct appeal, the Indiana Court of Appeals summarized the relevant facts:

> In September 2008, Heffern was staying at the home of Joseph Randall, who lived at 117 South Munson Avenue in Portland. On the evening of September 7, Heffern, Addison Pijnapples, her husband Tom Smith, and Rod Berry were at the home of Tina Whiting, a neighbor of Randall. The group snorted crushed Valium and then drove to Ohio, where Berry purchased one or two thirty-packs of beer. After having dinner with his girlfriend, Randall went to Whiting's home to watch a football game on television. Randall's young daughter, Heffern, Pijnapples, her husband Tom Smith, and Rod Berry were also there. At some point, while Randall was watching

television, Heffern and Whiting were talking in the kitchen. Whiting told Heffern "about a guy that she was having problems with," and Heffern "asked her if she wanted him to beat him up for her, get him to leave him [sic] alone or leave her alone." Transcript at 30. Whiting told Heffern that if he beat up the guy "he might have some pills [Heffern] could take from him." *Id*. Randall then left the apartment with his child.

Heffern told Pijnapples, Smith, and Berry that Shawn Buckner had raped Whiting. Heffern also talked to them about "going to get Shawn so he could beat his ass." *Id*. at 268. The group continued to ingest Valium pills, drank beer, and discussed a plan to beat up Buckner and take prescription pills from him. Specifically, Whiting and Pijnapples were to offer to have a joint sexual encounter with Buckner in order to lure him to Whiting's apartment. The three men were to wait in hiding in the apartment and, when Buckner arrived, Heffern wanted to "initiate the action" against Buckner because he wanted to "beat up Shawn." *Id*. at 275.

Whiting and Pijnapples left to find Buckner. About the same time, Berry moved his car from in front of Whiting's home so that Buckner would not know that anyone else was there. Whiting and Pijnapples found Buckner at his uncle's home, helping his uncle clean copper for resale. Buckner said he was busy and asked them to come back in twenty minutes. When the women returned thirty minutes later, Buckner washed his hands and told his uncle that the women had asked if Buckner wanted to "have a threesome." Transcript at 42. Buckner borrowed twenty dollars from his uncle and left with Whiting and Pijnapples.

Whiting, Pijnapples, and Buckner arrived at Whiting's home, where Heffern, Smith, and Berry were hiding in a back room. When Whiting gave a previously agreed upon code word, the men came out of hiding, and Heffern began punching Buckner. Buckner tried to escape, but Berry grabbed him and began hitting Buckner as well. At one point Smith pushed Buckner to the kitchen floor. Heffern, Berry, and Smith kicked and punched Buckner's head and body numerous times while he was on the floor. During the assault, Buckner moaned. The men then removed Buckner's clothing and took twenty dollars they had found in his sock. Smith gave the money to Pijnapples and told her to buy more beer. Smith threatened to cut off Buckner's penis, but Heffern would not allow it.

The men wrapped Buckner in blankets and carried him to Berry's Jeep. The men then left the apartment in the Jeep, with Berry driving, Heffern and Smith as passengers, and Buckner moaning loudly in the back. Smith called Buckner a child molester. In the rear view mirror, Berry saw Heffern reach back and punch Buckner rapidly at least ten times. Buckner stopped moaning. At some point Berry stopped the Jeep on a secluded road near a cornfield. After Heffern and Smith opened the Jeep's back hatch and removed Buckner, Berry drove down the road to find a place to turn the vehicle around. When he returned to the site where the others had exited the vehicle, Berry saw no one beside the road. He stopped the Jeep and waited, but when no one appeared, he exited the vehicle.

2

Berry walked into the cornfield, looking for Heffern and Smith. Eventually he saw two silhouettes, Heffern and Smith. Buckner was lying on the ground nearby. Smith handed Berry a knife, told Berry he had stabbed Buckner, and instructed Berry to do the same. Buckner was not making any noise, and Berry believed him to be dead. Berry stabbed Buckner in the lower side twice. Berry left the knife on Buckner's chest and walked back to the Jeep. Smith and Heffern followed a minute later. As Berry drove, he began to worry that leaving the knife at the scene could implicate him, but Smith said he had the knife and showed Berry that it was sticking out of his pocket.

When the men arrived at Whiting's home, Whiting and Pijnapples were not yet there. Although it appeared that the home had been cleaned some since the struggle, the men worked to clean the scene of any evidence of Buckner's beating and gathered anything with blood on it. When Whiting and Pijnapples arrived, all five took off any item of clothing that could have come into contact with Buckner. They placed the clothing and items from the house tainted by the struggle into a trash bag. When Smith and Berry later left, Heffern was burning something, not food, on the grill.

Taking the trash bag with them, Berry and Smith drove to a gas station where Smith bought gas for Berry's Jeep. Berry and Smith threw the knife over a bridge. They then drove to the country and burned the trash bag and its contents in a cornfield. From Whiting's home, Heffern went to see Sierra Ferrara, the mother of his children. When she saw scrapes on his knuckles, he said that he had been in a fight on the way to her house. Some days later, Heffern called Ferrara and told her that, if police questioned her, she should say that Heffern had spent the night with her on September 7.

Two or three days after the murder, Berry, Smith, and Pijnapples used Berry's Jeep to move Buckner's body from the cornfield. They buried the body behind a barn belonging to a friend. Berry had told the friend that they were burying a dog. A missing persons report was filed regarding Buckner, and police officers found the burial site on or around September 10.

On September 11, the State charged Heffern with murder, a felony, and robbery resulting in bodily injury, as a Class B felony. The robbery charge alleged in part that Heffern had knowingly taken property, money, from Buckner "by using force, to-wit: by punching, kicking, and choking; said act resulting in bodily injury to Shawn M. Buckner, to-wit: lacerations and bruising …." Appellant's App. at 14. On October 14, 2009, the State moved to amend the robbery count to charge robbery resulting in serious bodily injury, a Class A felony. Heffern filed a motion to strike the amendment. Following a hearing, the trial court denied that motion.

On December 10, 2009, the State filed a second amendment to the robbery charge ("Second Amendment"). The Second Amendment alleged that Heffern had

knowingly taken property from Buckner "by using force, while armed with a deadly weapon, to-wit: a knife …." *Id.* at 113. And on January 21, 2010, the State amended the information by adding count 3, which alleged that Heffern had committed felony murder. Heffern filed a motion to strike the amendment adding count 3. After a hearing, the trial court denied that motion.

On June 4, 2010, Heffern filed a motion objecting to the admission of portions of the transcript of police interrogations and videotapes of those interrogations. The jury trial commenced on June 14, at which time the trial court overruled Heffern's objection but agreed to give a "limiting instruction and admonishment[.]" Transcript at 5. The trial proceeded through June 17. Following deliberations, the jury returned a verdict finding Heffern guilty on all three counts. The court entered judgment on the verdict as to murder and robbery and sentenced Heffern to an aggregate term of seventy-five years.

*Heffern v. State*, 2011 WL 1565999, at *1-3 (Ind. Ct. App. Apr. 26, 2011) (footnotes omitted), *trans. denied*.; Dkt. No. 14-5 at 2-7 (Slip Opinion).

Mr. Heffern appealed, raising four issues: (1) that the amendment to the robbery charging information violated Indiana law and his right to due process; (2) that the trial court should have given a limiting instruction about the police officers' statements during the recorded interview under the Indiana Rules of Evidence; (3) that the evidence was insufficient to convict him of murder and robbery; and (4) that his convictions for murder and robbery violated federal and state double jeopardy. Dkt. No. 14-5 at 2. On April 26, 2011, the Indiana Court of Appeals affirmed the conviction and sentence. *Heffern*, 2011 WL 1565999, at *11. The Indiana Court of Appeals held that: (1) Mr. Heffern waived his argument about the charging information by failing to object at trial and, in any case, he failed to show fundamental error; (2) Mr. Heffern waived his argument about the jury instruction, but that, in any case, the Indiana Rules of Evidence did not require the trial court to provide that limiting instruction to the jury; (3) there was sufficient evidence to support his convictions; and (4) Mr. Heffern waived his federal double jeopardy argument and there was no violation of Indiana double jeopardy. *Id.* at *4-11. On June 29, 2011, the Indiana Supreme Court denied transfer.

On October 3, 2011, Mr. Heffern filed his petition for post-conviction relief. He filed an amended petition on December 15, 2014. The trial court conducted a post-conviction evidentiary hearing on June 23, 2015. On August 9, 2015, the post-conviction court denied his petition.

Mr. Heffern appealed, arguing that his appellate counsel was ineffective for not challenging a sentencing aggravating circumstance. On July 22, 2016, the Indiana Court of Appeals affirmed the denial of post-conviction relief. *Heffern v. State*, 2016 WL 3960031 (Ind. Ct. App. July 22, 2016). Mr. Heffern sought review from the Indiana Supreme Court, but that court denied transfer on October 20, 2016.

On September 25, 2017, Mr. Heffern filed this petition for a writ of habeas corpus.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Mr. Heffern's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

The Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and has emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

Under AEDPA, the Court reviews the last state court decision to address the merits of a prisoner's claim. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Where a claim has been adjudicated on the merits in state court, habeas relief is available under the deferential AEDPA standard only if the state court's determination was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes*, 334 F.3d 696 (7th Cir. 2003)). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

### III. Discussion

Mr. Heffern raises four grounds in his amended petition: (1) the trial court violated his due process rights by allowing the state to amend the charging information after the omnibus date; (2) the trial court erred by not giving a limiting instruction regarding the officers' statements;

(3) the evidence was insufficient to support his convictions; and (4) the entry of judgment and conviction for both murder and armed robbery violated double jeopardy. Dkt. No. 7.

The respondent argues that: (1) ground one is procedurally defaulted, partly not cognizable, and meritless; (2) ground two is not cognizable and procedurally defaulted; (3) ground three is meritless; and (4) ground four is partly not cognizable and partly procedurally defaulted and meritless. Dkt. No. 14.

Mr. Heffern did not a file a reply, and the time to do so has passed.

**A.  Ground One: Amending the Charging Information**

Ground one asserts that the trial court violated Mr. Heffern's due process rights by allowing the state to amend the charging information after the omnibus date. In his petition, Mr. Heffern alleges that this ground is based on a violation of his due process rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution and the Art. 1, § 12 of the Indiana Constitution.

On this issue, the Indiana Court of Appeals held:

> Heffern contends that the trial court erred when it permitted the State to amend the robbery charge pursuant to the Second Amendment. The State counters that Heffern waived his challenge to the Second Amendment because he did not object to the same at trial. We must agree with the State. The failure to object to the amendment of a charging information at trial results in waiver of the issue on appeal. *See Fowler v. State*, 878 N.E.2d 889, 892 (Ind. 2008) (holding that defendant had preserved for appeal his challenge to amendment of charge by timely objecting in the trial court). Heffern has waived his challenge to the Second Amendment.
>
> Heffern seeks to avoid waiver by invoking the fundamental error doctrine. …The thrust of Heffern's complaint is that he had only six months to prepare his defense based on the amended charge. But Heffern has not shown or even discussed why having six months to adjust his defense resulted in "an undeniable and substantial potential for harm." *Cooper*, 854 N.E.2d at 835. Thus, Heffern has not demonstrated that the trial court fundamentally erred when it allowed the State to prosecute him based on the charge in the Second Amendment.

*Heffern*, 2011 WL 1565999, at *3-4 (footnote omitted).

"A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citation and internal quotation marks omitted). This doctrine is premised on the rule that federal courts have "no power to review a state law determination that is sufficient to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The state-law ground precluding review by a federal habeas court "may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker*, 562 U.S. at 315. Therefore, "[e]rrors of state law in and of themselves are not cognizable on habeas review." *Samuel v. Frank*, 525 F.3d 566, 574 (7th Cir. 2008) (citation and quotation marks omitted).

The decision by the state court here rests on state law grounds that are independent of any federal question and are adequate to support the judgment. Habeas relief is not available on this ground for this reason.

However, Mr. Heffern alleges in his amended petition that the state courts violated his due process rights pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution. *See* Dkt. No. 7 at 5. In state court, Mr. Heffern relied solely upon Indiana law regarding the amendment of the charging information. *See* Dkt. No. 14-3 at 19-23 (brief to Indiana Court of Appeals); Dkt. No. 14-6 at 4-6(petition to transfer). At no time did he assert a federal due process violation, except a passing cite to the U.S. Constitution as part of a string cite:

> The doctrine of fundamental error is only available in egregious circumstances. *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003). Such error must be so prejudicial to the rights of the defendant as to make a fair trial impossible and must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002). Due process requires that a criminal defendant be given notice of the crime or crimes with which he is charged so that he can prepare his defense; absent sufficient notice that a particular

8

> offense is charged, a defendant cannot be convicted of that crime. *Lewis v. State*, 413 N.E.2d 1069, 1071 (Ind. Ct. App. 1980); Ind. Const. Art. I, §13, **U.S. Const. Amends. 5, 14.**

Dkt. No. 14-6 at 5-6 (footnote omitted and emphasis added); *see also* Dkt. No. 14-3 at 16. Rather, Mr. Heffern's arguments focused on Indiana state law precedent and IC § 35-34-1-5. Given the facts of the case and Mr. Heffern's argument, it is unlikely that the state courts would have been alerted to a federal constitutional issue. "[F]ederal courts will not review a habeas petition unless the prisoner has fairly presented his claims throughout at least one complete round of state-court review." *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) (citations and quotation marks omitted); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("the prisoner must 'fairly present' his claim in each appropriate state court …, thereby alerting that court to the federal nature of the claim") (internal citations omitted). "Fair presentment, however, does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 814-15 (7th Cir. 2006); *see also Picard v. Connor*, 404 U.S. 270, 277-78 (1971) ("[W]e do not imply that respondent could have raised the equal protection claim only by citing 'book and verse on the federal constitution.' We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts.") (citations omitted). "If the facts presented do not evoke a familiar constitutional constraint, there is no reason to believe the state courts had a fair opportunity to consider the federal claim." *Anderson*, 471 F.3d at 815. Thus, Mr. Heffern's federal claims, to the extent there are any, are procedurally defaulted.

Mr. Heffern could overcome procedural default if he either demonstrates cause for his default and prejudice resulting therefrom, or that a miscarriage of justice will result. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (internal citations omitted). Establishing cause ordinarily

requires demonstrating an external obstacle preventing the petitioner from fairly presenting the federal claim in state court, and actual prejudice, not merely a possibility of prejudice, is required. *Id*. at 514-15. The miscarriage-of-justice-exception applies when the petitioner can demonstrate that he is actually innocent. *Id*. at 515. Mr. Heffern has procedurally defaulted, and has not alleged that he meets the requirements for these exceptions.

Accordingly, Mr. Heffern is not entitled to habeas relief on this ground.

**B.     Ground Two: Jury Instructions**

Ground Two asserts that the trial court erred by not giving a limiting instruction about the police officers' statements during a recorded interview under the Indiana Rules of Evidence. On this issue, the Indiana Court of Appeals held:

> Heffern next contends that the trial court abused its discretion when it did not give preliminary or final limiting instructions to the jury regarding certain evidence admitted over his objection. Our standard of review of a trial court's findings as to the admissibility of evidence is an abuse of discretion. *Roush v. State*, 875 N.E.2d 801, 808 (Ind. Ct. App. 2008). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*.
> Heffern argues that the trial court abused its discretion in admitting the video recording and corresponding transcript of Heffern's September 12 interrogation by police. Specifically, Heffern contends that those exhibits contain statements by police officers "who commented on guilt or innocence of Mr. Heffern, credibility of witnesses, and other matters prohibited by [Evidence Rule] 704(b)." Appellant's Brief at 12. Heffern is correct about the admissibility of the officer's statements. *See Washington v. State*, 808 N.E.2d 617, 624–25 (Ind. 2004) ("although a trial court has no affirmative duty to consider giving an admonishment in the absence of a party's request, it is error to admit statements by an interrogating officer without any limiting instruction or admonishment."). On appeal he argues that the trial court should have given a preliminary or final limiting instruction in addition to the admonition. We cannot agree.
>
> In support of his argument, Heffern relies in part on Evidence Rule 105. That rule provides: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly." Evid. R. 105. Our supreme court discussed the meaning of this rule:

10

> The Indiana version of Rule 105 is apparently the only in the nation to use the term "admonish" rather than "instruct." *Cf., e.g., Fed. R. Evid. 105*. Judge Miller has opined that the distinction is intended to enable a party to request a limiting admonition at the time the evidence is offered, rather than waiting until the jury instructions. 12 R. Miller, Indiana Practice § 105.104 at 109–10 (2d. ed.1995). Thus, a limiting admonition under Rule 105 (usually during trial) is to be distinguished from a limiting instruction (usually after evidence has been presented). *Id.*, *see also* Ind. Crim. Rule 8; Ind. Trial Rule 51(C) (outlining requirements for preserving challenge to a jury instruction).

*Humphrey v. State*, 680 N.E.2d 836, 839 n. 7 (Ind.1997). *See also Martin v. State*, 736 N.E.2d 1213, 1218 n. 8 (Ind.2000). "Rule 105 does not preclude trial courts from giving a limiting admonition or instruction sua sponte as a matter of discretion,[ ] but by its plain terms imposes no affirmative duty to do so." *Humphrey*, 680 N.E.2d at 839.

…

Heffern contends that the trial court committed reversible error when it failed to give a limiting preliminary or final instruction regarding Exhibits 87 and 88. But where "the claimed error is failure to give an instruction, 'a tendered instruction is necessary to preserve error because, without the substance of an instruction upon which to rule, the trial court has not been given a reasonable opportunity to consider and implement the request.'" *Fry v. State*, 748 N.E.2d 369, 373 (Ind. 2001) (quoting *Scisney v. State*, 701 N.E.2d 847, 848 n. 3 (Ind. 1998)). Because Heffern did not tender a proposed limiting instruction regarding the statements by law enforcement in Exhibits 87 and 88, he has waived any claim of error by failing to give an instruction on that subject. *See id*.

Further, again, Rule 105 imposes no affirmative duty on the court to instruct the jury on that issue. *Humphrey*, 680 N.E.2d at 839. In any event, at the time the exhibits were offered, the trial court admonished the jury that law enforcement officers investigating a crime may make false statements in order to obtain information; statements made by law enforcement officers or attributed to third parties by law enforcement officers could not be considered; and only Heffern's statements in the exhibits could be considered as evidence. That admonishment adequately addressed the basis of Heffern's objection and instructed the jury accordingly on what it could consider as evidence. Heffern has not shown that he was prejudiced by the trial court's admonishing the jury without also giving a similar preliminary or final instruction.

…

>Heffern has not shown that the trial court was required to have given a preliminary or final limiting instruction regarding the statements made by police in Exhibits 87 and 88.

*Heffern*, 2011 WL 1565999, at *4-7 (footnote omitted).

The decision by the state court rests on a state law ground that is independent of any federal question and is adequate to support the judgment. Because Mr. Heffern fails to identify any unreasonable application of clearly established federal law and his argument is based solely on an alleged violation of Indiana law, he is not entitled to habeas corpus relief on this ground.

### C. Ground Three: Insufficient Evidence

Ground three asserts that there was insufficient evidence to convict Mr. Heffern of both murder and armed robbery.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Supreme Court sets forth the clearly established federal law governing a challenge to the sufficiency of the evidence. Under *Jackson*, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* The Supreme Court has explained that claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curium). First, on direct appeal, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id*. (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)) (internal quotations omitted). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court

decision was 'objectively unreasonable.'" *Id*. (quoting *Cavazos*, 565 U.S. at 2) (internal quotation omitted).

Without citing to *Jackson*, the Indiana Court of Appeals recited the *Jackson* standard. *Heffern,* 2011 WL 1565999, at *7. The Indiana Court of Appeals held:

> *Robbery with a Deadly Weapon*
>
> Heffern contends that the evidence is insufficient to support his conviction for robbery with a deadly weapon. Specifically, he argues that there is no evidence that he or anyone else was armed with a knife until the time of the murder. We cannot agree.
>
> To prove robbery, as a Class B felony, the State was required to show beyond a reasonable doubt that Heffern knowingly took property from Buckner by use of force and while armed with a deadly weapon. *See* Ind. Code § 35–42–5–1(1). A defendant may be convicted as a principal if he knowingly or intentionally aided, induced, or caused another person to commit the offense. Ind. Code § 35–41–2–4.
>
> In Heffern's September 10 interview with police, Heffern stated that Smith took twenty dollars that he found in Buckner's sock while Heffern, Smith, and Berry were beating Buckner in Whiting's kitchen. Heffern also stated that, during that beating, Smith had threatened to cut off Buckner's penis, but Heffern had stopped him. The jury could have reasonably inferred that Heffern and the others who jointly attacked Buckner were armed with a knife at the time of the robbery. And the jury could have found Heffern culpable as a principal for robbery based on accomplice liability. *See* Ind. Code § 35–41–2–4. Thus, the evidence is sufficient to support Heffern's conviction for robbery while armed with a deadly weapon.
>
> *Murder*
>
> Heffern next contends that the evidence is insufficient to show that he committed murder. To prove the offense of murder, the State was required to prove beyond a reasonable doubt that Heffern knowingly killed Buckner. *See* Ind. Code § 35–42–1–1(1). Again, under a theory of accomplice liability, Heffern could be convicted as a principal if he knowingly or intentionally aided, induced, or caused another person to commit the offense. *See* Ind. Code § 35–41–2–4. Specifically, he acknowledges that under accomplice liability a defendant need not have participated in each and every element of an offense.
>
> The evidence shows that Heffern initiated and participated in the beating of Buckner in Whiting's apartment. When Buckner failed to escape Heffern's initial attack, Heffern, Smith, and Berry kicked and punched Buckner's head and body repeatedly as he lay on the floor in Whiting's kitchen. The men then removed

Buckner's clothes, wrapped him in a blanket, and carried him to Berry's vehicle. In transit, Buckner was moaning loudly. Heffner reached around and punched him several times, and the moaning stopped. When they reached a cornfield, Heffern and Smith unloaded Buckner and carried him into the cornfield while Berry turned the car around. When Berry returned, he found Heffern and Smith standing near Buckner's body a few rows into the cornfield. Smith told Berry that Buckner had already been stabbed, and then Smith gave Berry a knife and told him to stab Buckner. Berry stabbed Buckner twice in his lower side and then returned to his vehicle. Heffern and Smith soon followed. The men returned to Whiting's apartment and began cleaning up evidence related to Buckner.

Dr. Paul Mellen, a pathologist, testified that the cause of death was "blunt force injuries to the head and sharp force injuries to the neck and abdomen[.]" Transcript at 197. Buckner had twenty puncture wounds in his abdomen as well as a one-and-one-half-inch "cutting mark" on the base of the left side of the penis. He also had two cuts to his neck: on the right side a superficial four-inch cut and on the left side a wound that "cut the greater vessels, actually cut the trachea or the windpipe area and went down as far as the cervical spine or vertebral column." *Id*. at 199. Dr. Mellen testified that the wound on the left side of the neck was not survivable.

The evidence shows that Heffern punched and kicked Buckner repeatedly, and helped transport him to a cornfield. Heffern was alone with Smith next to the body when Berry turned his vehicle around. While Berry walked back to his vehicle after stabbing Buckner in the cornfield, Heffern and Smith remained in the field for several minutes. There is substantial evidence showing that Heffner assisted in punching and beating Buckner about the head. Berry testified that he only stabbed Buckner twice in the lower back, but the evidence shows multiple stab wounds, including a fatal neck wound. A jury could reasonably have inferred either that Heffern stabbed Buckner in the abdomen or neck or that he knowingly or intentionally aided, induced, or caused Smith to stab Buckner in the abdomen or neck. The evidence is sufficient to support Heffern's conviction for murder.

Still, Heffern maintains:

> There was no indication Michael Heffern knew anyone in the group had a knife until Smith, Berry, and he were at the cornfield, long after the initial confrontation occurred in Whiting's apartment. There was no indication Mr. Heffern had any reason to suspect a deadly weapon would be used by one of the others in the group. Therefore, the judgment of conviction for murder, as against him, was not supported by sufficient evidence.

Appellant's Brief at 25. Heffern does not explain how his alleged lack of knowledge that anyone was armed with a knife supports the reversal of his conviction for murder as an accomplice. Moreover, as discussed above, the jury could have reasonably inferred that Heffern, as the one who had planned the assault, knew that

> someone had a knife. First, he did not allow Smith to carry out on his threat to cut off Buckner's penis in Whiting's kitchen. Second, he was standing by the body in the cornfield when Smith gave Berry a knife and told him to stab Buckner. Finally, Berry testified that he only stabbed Buckner twice in the lower back, but Buckner had sustained twenty stab wounds to his abdomen, a cut at the base of his penis, and two cuts on his neck, one of them fatal. Again, the jury could have reasonably inferred that Heffern either caused Buckner's death or aided, induced or caused another to kill Buckner.

*Id.* at *8-9.

This assessment is compatible with the federal *Jackson* standard – the Indiana Court of Appeals reviewed the evidence and concluded that a rational trier of fact could have found that Mr. Heffern committed murder and armed robbery beyond a reasonable doubt. And because of this reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy v. Cross*, 565 U.S. 65, 75 (2011). Accordingly, Mr. Heffern is not entitled to habeas relief on this ground.

### D. Ground Four: Double Jeopardy

Ground four relates to whether Mr. Heffern's convictions for murder and armed robbery constitute double jeopardy under the Indiana Constitution and the U.S. Constitution. On this issue, the Indiana Court of Appeals held:

> Last, Heffern contends that the entry of judgment of conviction for both robbery and murder violates his right to be free from double jeopardy. The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. Double jeopardy analysis involves the dual inquiries of the statutory elements test and the actual evidence test. *Davis v. State*, 770 N.E.2d 319, 323 (Ind. 2002) (citing *Richardson v. State*, 717 N.E.2d 32 (Ind.1999)). The standard for evaluating an alleged double jeopardy violation is well-settled:
>
>> In *Richardson v. State* (1999) Ind., 717 N.E.2d 32, our Supreme Court established a two-part test for analyzing double jeopardy claims under the Indiana Constitution and concluded:
>>
>>> "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either

> the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson*, supra at 49.
>
> Thus, even if there was no double jeopardy violation in the present case based upon the essential statutory elements of the crimes of forgery and theft, a violation may still have occurred if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts. The defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.
>
> *Williams v. State*, 892 N.E.2d 666, 668–69 (Ind. Ct. App. 2008) (some citations and quotations omitted), *trans. denied*.

Again, to prove the offense of robbery with a deadly weapon, a Class B felony, the State was required to show beyond a reasonable doubt that Heffern knowingly took property from Buckner by use of force and while armed with a deadly weapon. *See* Ind. Code § 35–42–5–1(1). And it is sufficient if the State showed that Heffern knowingly or intentionally aided, induced, or caused another to rob Buckner. Heffern argues that the overriding cause of death was established by evidence of the stab wound to Buckner's neck. Appellant's Brief at 26–27. The knife that was used to inflict that wound was also used to elevate the robbery charge from a Class C felony to a Class B felony. He states that there was evidence of only one knife being used in the offenses. Thus, he concludes that the elevation of the robbery charge violates his right to be free from double jeopardy.

In support Heffern cites *Walker v. State*, 758 N.E.2d 563 (Ind. Ct. App. 2001), *trans. denied*. There, the State used Walker's act of shooting his victim with a handgun to establish both voluntary manslaughter and robbery with a deadly weapon. We held that the evidence used to establish voluntary manslaughter was "clearly intertwined" with the evidence used to establish robbery with a deadly weapon. *Id*. at 567. As such, we concluded that the elevation of the robbery charge from a Class B felony to robbery with a deadly weapon, as a Class B felony, violated double jeopardy. *Id*.

Here, as discussed above, the evidence shows that Heffern, Smith, or Berry was armed with a knife when they were beating Buckner in Whiting's kitchen and Smith took twenty dollars from Buckner's sock. Thus, the robbery was supported by evidence that the perpetrators were armed with a knife. But the murder was later accomplished by the use of a knife, namely, stabbing Buckner in the neck, severing his vessels and windpipe, at an entirely different location from where the beating had occurred. The evidence of being armed with a weapon is not the same as evidence of use of that same weapon. Thus, *Walker* is inapposite. Heffern has not

shown that the elevation of the robbery charge to a Class B felony based on being armed with a deadly weapon violated his right to be free from double jeopardy.

*Heffern*, 2011 WL 1565999, at *10-11 (footnote omitted).

The decision by the state court here rests on state law grounds that are independent of any federal question and are adequate to support the judgment. Habeas relief is not available on this ground for this reason.

However, Mr. Heffern alleges in his amended petition that his convictions violate Double Jeopardy under the U.S. Constitution. *See* Dkt. No. 7 at 10. In a footnote, however, the Indiana Court of Appeals noted: "Heffern raises double jeopardy under both the Indiana Constitution and United States Constitution. But the cases he cites explaining the analysis pertain only to the state constitution, and he makes no independent argument under the federal Constitution. As such, we limit our review to double jeopardy under the Indiana Constitution." *Id.* at *10, n.5. Thus, Mr. Heffern did not argue or analyze how his sentence would violate double jeopardy under the U.S. Constitution in state court. Given the facts of the case and Mr. Heffern's argument, it is unlikely that the state courts would have been alerted to a federal constitutional issue. Indeed, the Indiana Court of Appeals noted that Mr. Heffern failed to raise a federal constitutional issue. Thus, Mr. Heffern's federal claims, to the extent there are any, are procedurally defaulted. *Johnson*, 786 F.3d at 504. Additionally, Mr. Heffern has failed to allege that he meets the requirements to overcome procedural default. *Perruquet*, 390 F.3d at 514. Thus, for the reasons above, Mr. Heffern is not entitled to habeas relief on this ground.

### IV.    Conclusion

This Court has carefully reviewed the state record in light of Mr. Heffern's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus

proceeding permits. Having applied the appropriate standard of review, and having considered the pleadings and the record, Mr. Heffern's petition for writ of habeas corpus must be **denied.**

Judgment consistent with this Entry shall now issue.

## V. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the Court finds that reasonable jurists would not find this Court's "assessment of the constitutional claims debatable or wrong," or find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 10/3/18

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Distribution:

MICHAEL P. HEFFERN
209312
INDIANA STATE PRISON
INDIANA STATE PRISON
Electronic Service Participant – Court Only

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov